UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**MICHAEL CHAVANNES,**

    Plaintiff,

    v.                                                           Case No. 23-CV-1-SCD

**SHOREWOOD SCHOOL DISTRICT** and
**EMPLOYERS MUTUAL CASUALTY COMPANY,**

    Defendants.

## DECISION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Michael Chavannes brings this suit against his former employer, Shorewood School District, and its insurer, Employers Mutual Casualty Company (collectively, the District). Chavannes alleges three variations of wrongful termination under federal law—racially disparate treatment, retaliation, and age discrimination. *See id.* The defendants filed a motion for summary judgment on all claims. *See* ECF No. 26. As explained herein, there is not a genuine dispute of material fact, and Chavannes has not established a prima facie case under any of his three theories. Accordingly, I will grant the defendants' motion for summary judgment in its entirety.

### BACKGROUND

The District employed Chavannes, who is of Caucasian descent, as the Director of Technology and Director of Instructional Technology from July 1, 2017 to May 11, 2022. Stip. Proposed Findings of Fact, ECF No. 25 ¶¶ 3, 5. Dr. JoAnn Sternke served as the Interim

Superintendent for the District—and Chavannes' supervisor—during Chavannes' last academic year of employment with the District. *Id.* ¶¶ 2, 6.

On February 24, 2022, James Norris (one of Chavannes' supervisees) informed Chavannes that he discovered inappropriate iMessages on another administrator's laptop, in the course of replacing and cleaning the laptop. Plaintiff's Resp. to Def.'s Proposed Findings of Fact, ECF No. 44 at 1–2. Chavannes reviewed the Apple Messenger Application for other similar messages and read those as well. *Id.* at 2–3. On February 24, Chavannes personally alerted Dr. Sternke to the "racially inflammatory" text messages that were apparently sent among four Black administrators. *Id.* at 2. Chavannes told Dr. Sternke that he found the messages and did not mention Norris. *Id.* at 3. Dr. Sternke did not understand Chavannes to be making a complaint or reporting any sort of hostile environment when she spoke with him on February 24, 2022. *Id.* at 4. Dr. Sternke gave Chavannes verbal directives not to do anything with the laptop and not to talk to anyone about the messages or possible litigation. *Id.*

After his conversation with Dr. Sternke, Chavannes took the laptop home. He also told Norris that he had discovered additional messages. *Id.* at 4. Chavannes brought another employee into the know when he advised Jack Wallner, another IT employee, that text messages existed. *Id.* at 5. Citing concerns about civil and criminal exposure, Wallner reached out to one of the administrators implicated in the text message conversation, who served as the District's Human Resources Manager. *Id.* at 5–6. (Wallner did not explain what his concerns about "exposure" were.) This administrator then told Dr. Sternke about Wallner's report, including that Chavannes had shown Wallner a flash drive of the messages he copied from the computer in question. *Id.* at 6. Based on this conversation, Dr. Sternke was concerned that Chavannes had violated two of the directives that she had given him when they spoke on

2

February 24: not to speak with anyone about the messages and not to do anything with the laptop. *Id.* In response to what she viewed as insubordination, Dr. Sternke engaged legal counsel on behalf of the District and determined that the District needed to undertake an investigation into the facts and circumstances surrounding Chavannes' conduct, which Dr. Sternke considered to have been "disrespectful, inappropriate, and unprofessional." *Id.* Dr. Sternke gave Chavannes a letter stating that the District was placing Chavannes "on paid administrative leave effective today, March 3, 2022, pending an investigation into potential misconduct that calls into question your ability to perform your job responsibilities as an administrator in the District." ECF No. 25 ¶ 20.

To facilitate the District's investigation, outside legal counsel interviewed Chavannes on March 17, 2022. ECF No. 44 at 8. Chavannes admitted to discussing the messages and litigation with Norris and Wallner after speaking with Dr. Sternke on February 24. *Id.* at 8–9. He also admitted to taking the laptop home and copying the messages in question onto a USB flash drive. *Id.* Chavannes maintains that he acted appropriately when taking the laptop home because the IT office no longer had a safe and that copying the messages was necessary to "preserve evidence." *Id.* at 12, 14. Chavannes explained to the interviewing attorney that Norris had originally found the messages, that Chavannes had not told Dr. Sternke about Norris' involvement, and that Chavannes told Wallner that Norris found the messages. *Id.* at 10. Chavannes further admitted that he contacted Norris "almost . . . daily" during his administrative leave, purportedly to check on his well-being. *Id.* Chavannes confirmed that he understood he was "not to contact District employees" while on paid administrative leave. *Id.*

According to outside counsel's investigation, Chavannes engaged in a pattern of insubordinate, unprofessional, and disrespectful behavior by repeatedly refusing to follow a

3

Case 2:23-cv-00001-SCD   Filed 06/10/24   Page 3 of 16   Document 50

number of directives that Dr. Sternke gave to Chavannes, both on February 24, 2022 and March 3, 2022. *Id.* at 11. Chavannes disputes this conclusion, claiming that he communicated with the employees in question: (1) so that they would not be accused of tampering with the messages, (2) to provide instructions on mandated testing while he was away, and (3) to check on Norris' well-being. *Id.* (He does not explain why Norris would need to be checked on.) Nevertheless, Dr. Sternke recommended that the Board of Education terminate Chavannes' employment, citing the factual findings from the investigation and the directives that Chavannes violated, as well as District policies, employee handbook provisions, and contract provisions that Dr. Sternke concluded had been violated by Chavannes' actions. *Id.* at 11–12. The Board of Education deliberated and ultimately voted to terminate Chavannes' employment. *Id.* at 16.

In January 2023, Chavannes filed a complaint in federal district court against the District, alleging that it discriminated against him in his employment based on his race, opposition to a hostile work environment, and age. *See* ECF Nos. 1, 20. The clerk randomly assigned the matter to Judge Stadtmueller, who reassigned it to me after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 9, 10, 11. On January 17, 2024, the defendants filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* ECF No. 26. Chavannes filed a brief in opposition, ECF No. 46, and the defendants filed a reply brief, ECF No. 49.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law,

"might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

Chavannes alleges the District: (1) racially discriminated against him; (2) retaliated against him for opposing racial discrimination and complaining of a hostile work

5

Case 2:23-cv-00001-SCD   Filed 06/10/24   Page 5 of 16   Document 50

environment; (3) discriminated against him on the basis of his age; and (4) unlawfully interfered with his retirement benefits. ECF No. 20 ¶¶ 38–39, 42, 48, 52. Because Chavannes concedes that his benefits claim is not viable, I will dismiss this cause of action without further analysis.[1] ECF No. 46 at 17. The District argues that I should grant summary judgment in its favor on the three remaining claims because Chavannes cannot make out a prima facie case, and even if he could, Chavannes cannot establish that the District's reason for terminating him was pretextual. ECF Nos. 37 at 14–28, 49 at 6.

I. **Racial Discrimination – Disparate Treatment**

Chavannes brings his racial discrimination claim under Title VII of the Civil Rights Act of 1964, as amended by Title I of the Civil Rights Act of 1991. *See* ECF No. 20 ¶¶ 1–3. On summary judgment motions for claims under Title VII, I must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race caused the discharge or other adverse employment action." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

Chavannes may meet this threshold utilizing a holistic approach—by producing "direct or circumstantial evidence of intentional racial discrimination"—or "he may rely on the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973)." *Id.* (citations omitted).

> To establish a prima facie case of racial discrimination in a reverse discrimination suit such as this one, the plaintiff bears the burden of establishing: (1) background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something fishy about the facts at hand; (2) he was performing his job up to his employer's legitimate expectations; (3) he suffered

---

[1] Chavannes indirectly invokes the Wisconsin Fair Employment Act (WFEA) in his amended complaint, ECF No. 20 ¶ 36, but acknowledges in his response to the motion for summary judgment that he has also not appropriately raised a claim under the WFEA. ECF No. 46 at 17–18.

6

an adverse employment action; and (4) he was treated less favorably than similarly-situated individuals who are not members of the protected class.

*Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007) (quotations cleaned up) (quoting *Phelan v. City of Chi.*, 347 F.3d 679, 684 (7th Cir. 2003)). If the employee can make out a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate, race-neutral reason for the adverse action. *Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001). "If the employer meets this burden of production, the plaintiff has the burden to show that the stated nondiscriminatory reason is pretextual." *Id.*

The defendants contend that Chavannes cannot establish a prima facie case of discrimination (although they concede that Chavannes suffered an adverse employment action (termination)). ECF No. 37 at 17.

### A. Background Circumstances

The first prong requires the plaintiff to demonstrate circumstances that would show the employer had reason or inclination to discriminate invidiously against whites or evidence that there is something fishy about the facts at hand. *Henry,* 507 F.3d at 564. During his deposition, Chavannes alleged that the District was "making a full push to be more inclusive and diverse." ECF No. 24 at 183:6–8. He explained that the District sought to hire more staff and administrators of color because it "was trying to have a full staff that represented the student population, which is a very common thing for many districts throughout the area." *Id.* at 184:13–185:9. Chavannes argues that the District's diversity goals caused the District to be "more interested in saving face and retaining high ranking Black employees" than treating everyone equally. ECF No. 46 at 20.

The Seventh Circuit has "explained that evidence that employers are under pressure from affirmative action plans, customers, public opinion, the EEOC, a judicial decree, or

corporate superiors imbued with belief in diversity may . . . satisfy this prong." *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 574 (7th Cir. 2021) (citing *Preston v. Wis. Health Fund*, 397 F.3d 539, 542 (7th Cir. 2005)). However, Chavannes offers no *evidence* to substantiate his claims about the District's alleged diversity push apart from his own opinion. Chavannes' self-serving statements are not sufficient to generate a genuine dispute of material fact on this prong. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (cleaned up) (citation omitted). Because a plaintiff has the burden to set forth a prima facie case, Chavannes' racial discrimination claim cannot get off the ground. *See Henry*, 507 F.3d at 564.

### B. Legitimate Job Expectations

Even if Chavannes had reached first base, he would be thrown out at second because he was not meeting his employer's legitimate job expectations. He declares that he met the District's legitimate expectations because his personnel record was "spotless" prior to being put on administrative leave in March 2022. ECF No. 46 at 20. The District points out that Chavannes has not actually provided any evidence to support his claims about positive evaluations. ECF Nos. 48 at 4–5, 49 at 6 n.2. But that is an aside. More troubling for Chavannes is that the District's stated reason for his termination involved his failure to meet the superintendent's expectations, a point that is undisputed. ECF No. 37 at 18. In fact, Chavannes acknowledges that Dr. Sternke told him (1) not to do anything with the laptop, and (2) not to talk to anyone about the messages or possible litigation. ECF No. 44 at 4–5. And Chavannes admits that he copied the messages from the laptop, took it to his house, and spoke with individuals about the messages and possible litigation. *See id.* at 4–5, 14.

8

Chavannes continued to violate his supervisor's directives by talking with at least one employee after the District placed him on administrative leave. *Id.* at 9. Chavannes claims that his reasons for taking the computer home (to "preserve evidence") and communicating with the employees (to "check in" on them) justified his actions. *Id.* at 11.

Chavannes' arguments miss the point. The question isn't whether the employee had a subjective, good-faith reason for disobeying an order; it's whether the District's expectations were legitimate. So, an employer who asks an employee to walk barefoot across hot coals could not legitimately expect the employee to follow its directive. But that's not what's alleged here. Instead, the employer simply asked Chavannes not to talk about the text messages or to do anything with the computer in question. This was one of countless legitimate approaches the employer could have taken under the circumstances. That Chavannes preferred that his employer take a more aggressive approach is not relevant. District policy is directed by the superintendent, not by IT employees. Thus, the fact that Chavannes disagreed with the wisdom of his employer's approach does not mean he was entitled to violate the employer's directives and follow his own lead. Accordingly, Chavannes has not only failed to produce any evidence that he was meeting his employer's legitimate expectations—as is his burden—but he has also failed to materially rebut the District's claim that he knowingly violated its legitimate expectations.

## C. Similarly Situated Employees

Even if he had satisfied the earlier prongs of the burden-shifting framework, Chavannes would not be able to demonstrate that similarly situated employees experienced more favorable treatment. *See Henry*, 507 F.3d at 564. Chavannes alleges that the four Black

9

administrators whose conversations he reported qualify as similarly situated employees.[2] ECF No. 46 at 20–24. The District argues the administrators are not legally sufficient comparators because they engaged in materially different conduct. ECF No. 37 at 18–20. "[S]imilarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects,' which includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009) (internal citations omitted). Here, Chavannes does not allege that he and the other administrators engaged in similar misconduct. He contends the administrators exchanged racially charged text messages in violation of the District's policies. ECF No. 46 at 22–23. (As the District points out, neither the messages nor the policies are in the record. ECF Nos. 48 at 5–7, 49 at 7.)

It's hard to see how the individuals who sent the text messages are in the same boat as Chavannes. Sending racist text messages is hardly the same as violating one's employer's directives about the investigation into those texts. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404–05 (7th Cir. 2007) (observing that the similarly situated requirement "normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them"). The fact that all of the employees had some nexus to the offending text messages does not somehow render them similarly situated. Therefore, Chavannes cannot satisfy the final prong of a prima facie case.

---

[2] In his response to the defendants' proposed findings of fact, Chavannes mentions that the District investigated Norris for conduct similar to that of Chavannes. ECF No. 44 at 20–22. But Chavannes does not substantively raise any argument that Norris should be considered similarly situated.

10

Case 2:23-cv-00001-SCD   Filed 06/10/24   Page 10 of 16   Document 50

### D. Employer's Legitimate Reason for Termination

Even if Chavannes could establish a prima facie case, the District has met its burden "to provide a legitimate justification" for the termination. *See Wince*, 66 F.4th at 1040. The ultimate question "is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014).

The record reflects that Chavannes knowingly violated Dr. Sternke's verbal directives, and after an investigation by outside counsel, Dr. Sternke recommended termination on that basis. ECF No. 44 at 8–9, 11–12. Therefore, Chavannes does not directly allege that the District's justification is "pretextual" and offers no evidentiary connection between his race and the termination. The fact that Chavannes raised a race-related concern at work does not somehow immunize him from being disciplined for unacceptable workplace activity. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (observing that "inappropriate workplace activities are not legitimized by an earlier-filed complaint of discrimination"). Chavannes' argument that he was justified in violating Dr. Sternke's directives only goes to whether the District's expectations were legitimate; it does not tend to show that the termination was pretextual. *See Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158–59 (7th Cir. 2014) ("The pretext inquiry focuses on whether the stated reason for the adverse employment action is in fact the reason for it—not on whether the stated reason is accurate or fair."). No reasonable factfinder could infer a racially discriminatory motive from this dearth of evidence. Accordingly, even if Chavannes had established a prima facie case, his racial discrimination claim would not survive the defendants' motion for summary judgment.

## II. Retaliation

Chavannes' second theory of race discrimination alleges that the District retaliated against him "by terminating him for opposing race discrimination in the workplace and for complaining of a hostile work environment . . . ." ECF No. 20 ¶ 48. Specifically, "Chavannes alleges that he opposed a racially hostile environment during his February 24, 2022 conversation with Dr. Sternke when he reported the use of racial slurs referring to Caucasian District employees by four African American District administrators." ECF No. 44 at 19–20. The District maintains that Chavannes' claim fails as a matter of law because he has not engaged in protected activity, and even if he has, there is not a causal connection between the activity and his termination. ECF No. 37 at 22–26.

"To survive summary judgment on a timely retaliation claim, plaintiff must offer evidence of: '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Logan v. City of Chicago*, 4 F.4th 529, 538 (7th Cir. 2021) (quoting *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018)). "For the first element—a statutorily protected activity—'[t]he plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII.'" *Id.* (quoting *Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019)). The objective reasonableness of the [plaintiff's] belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citation omitted). Prohibited conduct only includes "discrimination by employers against employees." *Logan*, 4 F.4th at 538.

12

The District argues that the messages sent by the four administrators did not constitute *employer* discrimination against employees. ECF No. 37 at 24. Chavannes does not argue otherwise. *See* ECF No. 46 at 24–27 (acknowledging that a hostile work environment claim requires a basis for employer liability but failing to further address the relationship). By failing to respond, Chavannes concedes that he cannot establish a hostile work environment claim, and therefore, that he was not opposing conduct prohibited by Title VII. *See Barnes v. Northwest Repossession, LLC*, 210 F. Supp. 3d 954, 970 (N.D. Ill. 2016) (holding that a plaintiff concedes the defendant's entitlement to summary judgment by failing to respond to arguments on that claim in the defendant's motion for summary judgment).

In any event, Chavannes also fails to establish the severe and pervasive prong of a hostile work environment claim. *See* ECF No. 46 at 24–27. When determining whether conduct is severe or pervasive, courts consider the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim." *Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1116 (7th Cir. 2022) (citing *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013)). Here, Chavannes claims that he sincerely believed the inflammatory text messages created a hostile work environment. ECF No. 46 at 26. But merely lodging a generic accusation of inflammatory language is not sufficient to establish severe and pervasive conduct. Chavannes has not even provided the messages in question, which were discovered unintentionally and apparently not directed at him. *See* ECF No. 44 at 1–2. Because

Chavannes has not established that he was complaining of a hostile work environment, no reasonable jury could find that he was engaged in statutorily protected activity.

Even if Chavannes was engaged in protected activity, he has not presented evidence to suggest that the District terminated him because he reported the text messages. To the contrary, the undisputed facts reflect that Chavannes violated several verbal directives from his supervisor and that the District terminated him over two months later after investigating that conduct. ECF No. 44 at 4–5, 9, 11. Chavannes claims the timing of the two events is "too convenient to be coincidence." ECF No. 46 at 26–27. The opposite is true. The District did not fire Chavannes right after he reported the offending text messages; it fired him after he disregarded the directives of his supervisor and after the district hired a law firm to investigate the situation. Thus, if anything, the timing supports the District's narrative rather than Chavannes'. In sum, because Chavannes cannot establish that he engaged in protected activity or that there is a causal connection between any such activity and his termination, the District is entitled to judgment as a matter of law on his retaliation claim.

### III. Age Discrimination

Chavannes also contends the District discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), codified at 29 U.S.C. § 621 et seq. ECF No. 20 ¶ 42. The elements of a prima facie case of age discrimination include: "(1) that [the plaintiff] is a member of a protected class; (2) [the plaintiff's] performance met [the employer's] legitimate expectations; (3) despite [the plaintiff's] performance, [the plaintiff] was subject to an adverse employment action; and (4) [the employer] treated similarly situated employees outside of [the plaintiff's] protected class more favorably." *Faas v. Sears, Rosebuck & Co.*, 532 F.3d 633, 642-43 (7th Cir. 2008). If the plaintiff

successfully raises a prima facie case, the burden shifts to the employer "to provide a legitimate, non-discriminatory reason" for the termination. *Id.* If the employer does so, the plaintiff "may attack . . . the proffered reason as mere pretext for discrimination." *Id.*

The District asserts that Chavannes has not made out a prima facie claim. ECF No. 37 at 27–28. As with his race discrimination claim, Chavannes cannot meet the second prong because he has not established that he was meeting his employer's expectations. *See supra* at 8–9. Even if he could state a prima facie case, however, he does not provide any evidence that age was a motivating factor in his termination. Instead, he simply points to the fact that the District replaced him with a younger employee, which he asserts was part of an effort to save money. That's not enough. Simple math dictates that when an older employee is terminated, the pool of potential replacements often includes as many or more employees who are younger than the terminated employee. Thus, because there's nothing inherently suspicious about being replaced by a younger employee, "[t]he mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination." *Markgren v. Saputo Cheese USA, Inc.*, No. 21-CV-429-JDP, 2023 WL 3568967, at *9 (W.D. Wis. May 19, 2023) (quoting *La Montagne v. Am. Convenience Prod.*, Inc., 750 F.2d 1405, 1413 (7th Cir. 1984), overruled on other grounds by *Ortiz*, 834 F.3d 760). Without any evidence of age discrimination, no reasonable factfinder could conclude that Chavannes' age caused his termination. Therefore, he cannot overcome the District's non-discriminatory reason for termination, and this claim fails as a matter of law.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendants' motion for summary judgment, ECF No. 26. The action is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 10th day of June, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge